NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 16-7067

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

MATTHEW GRACE, *et al.*,
APPELLEES,

v.

DISTRICT OF COLUMBIA, *et al.*,
APPELLANTS.

ON APPEAL FROM AN ORDER OF THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**REPLY IN SUPPORT OF MOTION FOR A STAY PENDING APPEAL
AND TO HOLD APPEAL IN ABEYANCE**

> KARL A. RACINE
> Attorney General for the District of Columbia
>
> TODD S. KIM
> Solicitor General
>
> LOREN L. ALIKHAN
> Deputy Solicitor General
>
> HOLLY M. JOHNSON
> Assistant Attorney General
> Office of the Solicitor General
>
> Office of the Attorney General
> 441 4th Street, NW, Suite 600S
> Washington, D.C. 20001
> (202) 442-9890
> holly.johnson@dc.gov

## I. A Stay Should Issue To Preserve The Status Quo Pending Appeal.

In *Wrenn v. District of Columbia* ("*Wrenn I*"), No. 15-7057, the Court found that the District of Columbia "satisfied the requirements for a stay." 6/29/15 Order. Such an order can be "persuasive," *Sherley v. Sebelius*, 689 F.3d 776, 783 (D.C. Cir. 2012), even without an opinion, *see CSE v. Bryant*, 773 F.3d 55, 58 (5th Cir. 2014). The Court's analysis applies *a fortiori* here, as the broader injunction at issue—applying to all applicants—poses a greater risk to the public.

Plaintiffs err in arguing that the "legal landscape" has changed since *Wrenn I* due to *Heller v. District of Columbia*, 801 F.3d 264 (D.C. Cir. 2015) ("*Heller III*"), and *Caetano v. Massachusetts*, 136 S. Ct. 1027 (2016) (per curiam). Opp. 16. *Heller III* makes it *more* likely the District will prevail: even though the gun law there applied in the home, "where the need for defense … is most acute," *District of Columbia v. Heller*, 554 U.S. 570, 628 (2008) ("*Heller I*"), the Court applied intermediate scrutiny, 801 F.3d at 279-80. And plaintiffs flatly misread *Caetano*, trying to cite *some* case to support them instead of the District. The Court there vacated a decision that stun guns are not protected "arms." 136 S. Ct. at 1028. Plaintiffs say it "confirm[ed] that the Second Amendment protects the right to bear arms … in public," Opp. 10, but the Court did not say a word suggesting as much, as the law at issue was a ban on *possession* and Massachusetts *allows* public carrying. *See Commonwealth v. Caetano*, 26 N.E.3d 688, 689, 695 (Mass. 2015).

Moreover, plaintiffs do not even try to account for the obvious implications of Judge Kollar-Kotelly's ruling in *Wrenn*. It highlights plaintiffs' inability to make the necessary showing that they are *clearly* entitled to an injunction, which makes it likely that the District will prevail here. It also offsets any deference this Court might afford Judge Leon's balancing of the equities. And it provides an independent public interest favoring a stay: protection of the integrity of the district court as an institution, especially where Judge Leon's injunction applies even to the *Wrenn* plaintiffs, who Judge Kollar-Kotelly held did *not* merit the same relief.

A.  **The District is likely to succeed on the merits of its appeal.**

The District has made a strong showing that it will prevail in this suit. But it bears emphasis that, to prevail on this appeal, the District need only show that *plaintiffs* have not met *their* burden to make a "clear showing" of entitlement to a preliminary injunction. *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011).

Plaintiffs face two hurdles they cannot clear. *First*, they will struggle to make a "clear showing" of entitlement to an injunction when, as they have conceded, "the persuasive authority from within [the district court] cuts both ways." RD 50 at 6. Indeed, given the extraordinary relief they seek—a mandatory preliminary injunction barring enforcement of a critical public safety law—this Court will likely require an even stronger showing. *See, e.g.*, *Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne*, 698 F.3d 1295, 1301 (10th

Cir. 2012). This Court, after all, views a preliminary injunction as "a stopgap … to maintain a status quo or 'to preserve the relative positions of the parties until a trial on the merits.'" *Sherley*, 689 F.3d at 781-82; *see Sherley*, 644 F.3d at 398 (considering whether injunction "preserve[d]" or "upend[ed]" status quo). Plaintiffs try to argue that Judge Leon's injunction "does not *change* the status quo; it *restores* it." Opp. 7. This makes no sense. They sued to change the status quo—to overturn a law that had been in place for over a year. And before that, the status quo was a ban on public carrying.

*Second*, the weight of authority strongly supports Judge Kollar-Kotelly. Since *Heller I*, this Court has applied nothing more than intermediate scrutiny to firearm regulations. *See Schrader v. Holder*, 704 F.3d 980, 989 (D.C. Cir. 2013); *Heller v. District of Columbia*, 670 F.3d 1244, 1256-57 (D.C. Cir. 2011) ("*Heller II*"). The Second, Third, and Fourth Circuits similarly apply nothing more rigorous to the "good reason" standard, each holding the law satisfies this test. *Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 96-97 (2d Cir. 2012); *Woollard v. Gallagher*, 712 F.3d 865, 876 (4th Cir. 2013); *Drake v. Filko*, 724 F.3d 426, 435 (3d Cir. 2013); *see also Bonidy v. USPS*, 790 F.3d 1121, 1126 (10th Cir. 2015) (holding that nothing more rigorous applies to regulation of firearms "outside the home").

Plaintiffs ask this Court to independently analyze the history guiding the Second Amendment's interpretation and conclude that all of these other circuits are

3

wrong. Opp. 9-13. Page limits preclude a complete response, but as the filings below demonstrate, plaintiffs' analysis is historically inaccurate. *See* RD 18-1; RD 20 at 8-15; RD 39 at 3-11. Rather, from the 1300s until long after 1791, carrying firearms was subject to strict regulation, especially in cities.[1] The merits of plaintiffs' constitutional challenge are complex and vigorously contested. This Court need not resolve them now, for "[t]he whole idea [of a stay] is to hold the matter under review in abeyance because the appellate court lacks sufficient time to decide the merits." *Nken v. Holder*, 556 U.S. 418, 432 (2009).

Plaintiffs also distort *Heller II* to argue that the longstanding tradition of regulating public carrying is irrelevant. Opp. 12, 16. They quote, without context, the Court's explanation that one can rebut a "'presumption' that the ['good reason' standard] is outside the reach of the Second Amendment" by showing "more than a de minimis effect upon [their] right." Opp. 12, 16 (quoting 670 F.3d at 1253). But what *is* their "right"? *Heller II* adopts a "two-step approach" in which the first step is to ask "whether a particular provision impinges upon a right *protected by the Second Amendment*." 670 F.3d at 1252 (emphasis added). Plaintiffs assume the conclusion that their desired conduct is protected when they say that the "good

---

[1] *See, e.g.*, Charles, *The Statute of Northampton by the Late Eighteenth Century: Clarifying the Intellectual Legacy*, 41 Fordham Urb. L.J. City Square 10 (2013); Ruben & Cornell, *Firearm Regionalism and Public Carry: Placing Southern Antebellum Case Law in Context*, 125 Yale L.J. F. 121 (2015).

reason" standard has an "effect upon [their] right." A restriction on conduct beyond the scope of the Second Amendment cannot justify Second-Amendment scrutiny, no matter how severe the burden. *See United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010). And there is no categorical "right" to carry any time a gun is desired for self-defense—*Heller I* identified bans on possession for felons and the mentally ill as "presumptively lawful," despite any self-defense need. 554 U.S. at 626-27. If the District shows that its law does not implicate a protected right, it must be upheld. That is the whole point of *Heller II*'s two-step analysis.

Plaintiffs also rely improperly on *Heller III*'s rejection of the District's one-pistol-per-month law, saying the "good reason" standard acts simply to reduce the number of guns carried in public. Opp. 13-14 (citing 801 F.3d at 280). In fact, the standard imposes no limit on the number of concealed-carry licenses that may be issued, nor does it burden the "core" right to keep arms in the home. Moreover, as Judge Kollar-Kotelly explained, *Heller III* found the law there unconstitutional "simply because the evidence presented did not support the fit of th[e] rule with the ends identified by the District." *Wrenn* RD 54 at 18-19 (citing *Heller v. District of Columbia*, No. 14-7071, 2016 WL 760940, at *1 (D.C. Cir. 2016) (Millett, J., concurring in denial of rehearing en banc based on "shortcomings in the record")).

So long as "the balance of hardships tips decidedly toward [the District]," a stay will "ordinarily" be warranted if it "has raised questions going to the merits so

5

serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation."[2] *WMATA v. Holiday Tours*, 559 F.2d 841, 844 (D.C. Cir. 1977). The District has satisfied that burden.

### B. The balance of equities favors a stay to preserve the status quo.

Plaintiffs again assume the conclusion in arguing that "enforcement of an unconstitutional law is always contrary to the public interest." Opp. 17. But the "good reason" standard *is not unconstitutional*. Three circuits have upheld it, and no circuit holds otherwise. A colorable constitutional claim does not automatically align a moving party's interests with the public. Instead, courts honor the "public interest in using laws enacted through the democratic process, until the laws' validity has been finally determined." *Frank v. Walker*, 769 F.3d 494, 496 (7th Cir. 2014); *see Planned Parenthood v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013) (staying injunction because, when "the State is the appealing party, its interest and harm merges with that of the public"). Indeed, "[t]his is the view the Supreme Court [took] in the same-sex-marriage cases": "[e]ven after federal courts held some states' laws invalid, the Court issued stays so that the laws remain[ed] in effect pending final resolution." *Frank*, 769 F.3d at 496.

---

[2] Plaintiffs argue that the "sliding scale" is "in serious doubt after *Winter v. NRDC*, 555 U.S. 7 (2008)." Opp. 6. But *Winter* speaks to preliminary injunctive relief, not stays pending appeal. *See Nken*, 556 U.S. at 434; *Citigroup v. VCG SMOF*, 598 F.3d 30, 37 (2d Cir. 2010) ("serious questions" test "does not conflict with *Nken*"); *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012) (similar).

6

District residents, through their elected representatives, decided based on a solid foundation of empirical and other evidence that allowing public carrying without "good reason" is inconsistent with public safety. RD 19-1 at 20. That finding is entitled to deference. *Heller II*, 670 F.3d at 1269. The Second, Third, and Fourth Circuits concur. *Kachalsky* cited studies showing that "widespread access to handguns in public increases the likelihood that felonies will result in death and fundamentally alters the safety and character of public spaces." 701 F.3d at 99. *Drake* credited New Jersey's judgment that, "when an individual carries a handgun in public for his or her own defense, he or she necessarily exposes members of the community to a somewhat heightened risk that they will be injured by that handgun." 724 F.3d at 439. And *Woollard* quoted expert testimony of law-enforcement specialists about the numerous ways in which the "good reason" standard "protects citizens and inhibits crime." 712 F.3d at 879-80.

Against these authorities, plaintiffs cite a law review article whose authors believed there would be "relatively little public safety impact if courts invalidate laws that prohibit gun carrying outside the home." Opp. 15. But that does not nullify the District's evidence, including a study published five years later that used sophisticated analytical models to adjust for a variety of factors and found robust evidence linking right-to-carry laws with crime. *See* RD 19-1 at 136-243, Donohue, *The Impact of Right to Carry Laws and the NRC Report: The Latest*

*Lessons for the Empirical Evaluation of Law and Policy* (2014). Quoting a statement from that study out of context, plaintiffs argue that "it is not possible to determine that there is a causal link between the passage of right-to-carry laws and crime rates." Opp. 15. The study's next sentence, however, explained that the word "determine" described "the level of certainty one strives for in academic work," and that an inability to achieve scientific certainty "does not mean that one cannot offer conclusions at some lower level of certainty such as 'more probable than not.'" RD 19-1 at 215. "Since policymakers need to act, it is more useful to offer guidance as to which evidence is likely to be most reliable than to simply reject all evidence until the highest level of certainty has been attained." *Id*.

District policymakers needed to act. This country is awash with gun violence (some by licensed carriers), and the District is not exempt. The Council studied the problem and found that public carrying was likely to "significantly increase rape, murder, and aggravated assault." RD 19-1 at 20. Plaintiffs' intangible harms do not outweigh these very real ones.

And plaintiffs apparently concede that they can claim only intangible harm from continued enforcement of the "good reason" standard. Opp. 18. This Court has found intangible harm, in the First Amendment context, sufficient to satisfy a preliminary-injunction movant's burden to show irreparable harm. *CFGC v. England*, 454 F.3d 290, 304 (D.C. Cir. 2006). However, when this is the only harm

8

the movant can show, the balance of the equities must "focus[] greater attention on the three other factors"—the likelihood of success on the merits, the harm to the other party, and the public interest. *Id.*

These factors plainly favor a stay, even before adding the public's interest in the integrity of the district court. Judge Leon effectively has overruled Judge Kollar-Kotelly, even as to the parties before her. A stay will remedy this unseemly conflict while an appeal is pending.

## II. This Appeal Should Be Held In Abeyance Pending *Wrenn II*.

If this Court enters a stay, it should hold this appeal in abeyance pending *Wrenn II*. Plaintiffs contend that this request is "extraordinary" and would affect "due process," Opp. 18, 19, but in fact this Court routinely will hold a case in abeyance when a previously filed appeal will dispose of or inform issues in the case—even over opposition and even without consulting the parties for their positions. *See, e.g.*, *Gordon v. Johnson*, No. 15-5084, 2/22/16 Order; *K.P. v. District of Columbia*, No. 15-7120, 2/10/16 Order; *AFGE v. Vilsack*, No. 15-5259, 12/9/15 Order; *AT&T, Inc. v. FCC*, No. 15-1038, 9/3/15 Order; *LPSC v. FERC*, No. 12-1282, 12/7/12 Order.[3] This case calls for the same approach because

---

[3] The Supreme Court routinely will hold a case that could be affected by a pending case, then remand without briefing and argument. *See, e.g.*, *Carp v. Michigan*, No. 14-824 (held along with many other cases, then granted, vacated, and remanded in light of *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016)).

9

*Wrenn II* involves precisely the same merits question and the Court's equities analysis will significantly inform the balance of equities here.

Plaintiffs contend that holding their case in abeyance will "*gut*" their right to be heard. Opp. 19. The Court employs abeyance, however, because it recognizes that proper resolution of important issues sometimes will call for an earlier-filed appeal to proceed first. Moreover, these cases could have been heard together in the district court—and thus, on appeal—under the related-case rules, but plaintiffs objected to that designation. Mot. 20. In any event, they are free to file as *amici* in *Wrenn II* or to move for additional briefing in this case after *Wrenn II* is decided.[4]

As an alternative, plaintiffs suggest briefing and arguing the cases in tandem, but the cases cannot be consolidated for appeal because the District is appellee in one and appellant in the other. Moreover, *Wrenn II* is set for September argument, and it would prejudice the District to truncate its briefing time in such an important case. Abeyance ensures both cases proceed in a properly considered fashion.

## CONCLUSION

This Court should enter a full stay pending appeal and hold this appeal in abeyance pending a decision in *Wrenn II*.

---

[4] Plaintiffs also argue that abeyance is not warranted because *Wrenn II* has not been fully briefed. Opp. 19. *But see Hill v. Holder*, No. 12-5409, 9/12/14 Order (holding case in abeyance pending *Asemani v. USCIS*, No. 13-5362, even though opening brief in *Asemani* was not due for another two months).

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

TODD S. KIM
Solicitor General

LOREN L. ALIKHAN
Deputy Solicitor General

/s/ Holly M. Johnson
HOLLY M. JOHNSON
Assistant Attorney General
Bar Number 476331
Office of the Solicitor General

Office of the Attorney General
441 4th Street, NW, Suite 600S
Washington, D.C. 20001
(202) 442-9890
(202) 715-7713 (fax)
holly.johnson@dc.gov

June 2016

# CERTIFICATE OF SERVICE

I certify that on June 6, 2016, this reply was served through the Court's ECF system, to:

Charles J. Cooper
David H. Thompson
Peter A. Patterson
Cooper & Kirk PLLC
1523 New Hampshire Ave, NW
Washington, D.C. 20036

/s/ Holly M. Johnson
HOLLY M. JOHNSON